1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br>　　Plaintiff,<br>　　　　v.<br><br>ASSURANCE IQ, LLC, a Washington limited liability company, also d/b/a Assurance, Assurance IQ, and National Family Assurance Corporation,<br><br><br>　　Defendant. | Case No. _____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission, ("FTC" or "Commission"), for its Complaint alleges:

1.    The FTC brings this action for Defendant's violations of Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Telemarketing Sales Rule ("TSR" or "Rule"), as amended, 16 C.F.R. Part 310 (2023). For these violations, the FTC seeks relief, including a permanent injunction,

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

1

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

1  monetary relief, and other relief pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.SC.

2  § 53(b) and 57b.

3  ## SUMMARY OF THE CASE

4  2.     Defendant Assurance IQ, LLC has misled consumers in need of health insurance

5  into buying healthcare plans that did not provide the coverage the Defendant promised. Targeting

6  consumers in need of low-cost insurance coverage, the Defendant's representations online and in

7  telemarketing calls have led consumers to believe that the healthcare plans the Defendant offered

8  and sold provided comprehensive coverage and essential health benefits of the sort provided

9  under the Patient Protection and Affordable Care Act ("ACA"), 18 U.S.C. § 18001, *et seq*. On

10  their sales calls, the Defendant's telemarketers have used mandatory sales scripts that

11  misrepresented key features of the short-term medical ("STM") plans, limited benefit indemnity

12  ("LBI") plans, and supplemental healthcare plans sold, creating the false impression it was

13  selling comprehensive insurance at a low cost. The Defendant has misrepresented that the STM

14  and LBI plans included preferred provider organization ("PPO") networks that would

15  substantially discount consumers' medical bills. The Defendant has failed to disclose to

16  consumers that these plans contained significant restrictions and exclusions on coverage and

17  limits on monetary benefits, making them neither comprehensive nor compliant with the ACA

18  and leaving consumers exposed to unexpected and significant out-of-pocket healthcare expenses.

19  The Defendant has led consumers to believe that benefits and discounts associated with separate

20  supplemental products were included in the STM and LBI plans they purchased, failing to

21  disclose that the supplemental products were declinable and carried their own separate monthly

22  fees. The Defendant has deceived consumers out of hundreds of millions of dollars through the

23  deceptive sales of these healthcare plans.

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

2

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

4.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), (b)(3), (c)(1), (c)(2), and (d), 1395(a), and 15 U.S.C. § 53(b).

## PLAINTIFF

5.    The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts and practices.

## DEFENDANT

6.    Defendant **Assurance IQ, LLC**, also doing business as Assurance, Assurance IQ, and National Family Assurance Corporation ("Assurance"), is a Washington limited liability company with its principal place of business at 920 Fifth Avenue, Suite 3600, Seattle, Washington 98104. Assurance was founded by Michael Rowell and Michael Paulus in 2016. Assurance transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, Assurance initiated outbound telemarketing calls to consumers to market and sell STM, LBI, and supplemental products, such as association memberships, telemedicine plans, prescription discount plans, dental discount plans, vision discount plans, and other ancillary benefit plans ("Supplemental Products"). Assurance has advertised, marketed, distributed, or sold these plans and products to consumers throughout the United States. Michael Paulus left Assurance in 2020, and Michael

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

3

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

Rowell left Assurance in 2021. In May 2024, Assurance announced that it would be winding down all business operations, including exiting the business of selling healthcare-related products.

## COMMERCE

7.    At all times relevant to this Complaint, Assurance has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

8.    Most consumers seeking health insurance purchase a comprehensive health insurance policy, which covers a substantial portion of consumers' healthcare expenses and transfers the risks of healthcare costs from consumers to the insurance company.

9.    Many comprehensive health insurance plans utilize a "Preferred Provider Organization" or "PPO."  A PPO contracts with medical providers, such as hospitals and doctors, to create a network of participating providers where plan members may pay less if they visit those providers.

10.    Comprehensive health insurance plans must comply with the requirements of the ACA (often referred to as "Obamacare"). Comprehensive health insurance plans must provide at least the following ten essential coverage benefits: ambulatory patient services; emergency services; hospitalization; pregnancy, maternity care, and newborn care; mental healthcare and care for substance use disorders; prescription drug coverage; rehabilitation and habilitation services and devices; laboratory services; preventative and wellness services; and pediatric services. Comprehensive health insurance plans cannot exclude coverage for pre-existing conditions. Another feature of comprehensive health insurance is the out-of-pocket maximum,

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

4

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

which represents the most a consumer will have to pay for covered medical services in a plan year, after which the health plan will pay 100% of the costs. Under a comprehensive plan, there are no annual or lifetime monetary limits on plan payments for essential coverage benefits.

11.    Starting in 2017, Assurance began marketing and selling healthcare-related STM plans, LBI plans, and Supplemental Products. These plans are not comprehensive insurance, they do not satisfy ACA coverage requirements, and they do not pay a substantial portion of all of charges for a broad range of medical services and treatments. Nonetheless, Assurance has marketed and sold these very limited coverage products via its websites and telemarketers to consumers seeking to purchase comprehensive insurance.

12.    Assurance sold most of these plans on behalf of Benefytt Technologies, formerly known as Health Insurance Innovations ("Benefytt"). Benefytt was not an insurer; rather it acted as a third-party distributor of health-related products for various carriers.  Benefytt directly debited consumers' bank accounts or charged consumers' credit cards for the monthly premium payments and other fees for these plans. Assurance performed the marketing and selling of these plans on Benefytt's behalf, and Benefytt paid over $100 million dollars in commissions and bonuses to Assurance in return. On August 11, 2022, the U.S. District Court for the Middle District of Florida entered a stipulated order between Benefytt and the FTC, resolving the FTC's allegations that Benefytt participated in the deceptive acts and practices alleged herein as the servicer of these plans. *See FTC v. Benefytt Technologies, Inc*., Case No. 8:22-cv-01794-TPB-JSS (M.D. Fla., Aug. 11, 2022). Assurance was not named in the complaint against Benefytt, and the stipulated order against Benefytt and others did not resolve the FTC's claims against the Defendant herein. Justice requires entry of an order against Assurance for its own deceptive acts and practices in marketing and selling these healthcare plans.

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

13.     Most of the STM, LBI, and Supplemental Products Assurance has sold were offered through memberships in trade associations, which require the consumer to join and pay monthly association membership dues and then additional fees for each of the healthcare-related products purchased with the membership.  In addition to many of the STM, LBI, and Supplemental Products at issue, membership in these associations purport to provide access to a variety of services and discounts to such things as magazine subscriptions, 1800Flowers, and cell phone services. These associations, while organized in one state, sell health plans to consumers in numerous states throughout the country. This structure allows these health plans to avoid potentially more stringent regulations in other states. For the LBI plans Assurance has sold, the associations were the actual policyholders, not the individual consumers. Consumers who purchased the Defendant's plans were often not made aware they were joining and buying into an association membership.

14.     Assurance has primarily generated customer leads for these healthcare products through its website, healthinsurance.net, by offering free quotes for affordable health insurance, inducing consumers to provide their name and contact information. Assurance has also purchased leads from third-party lead generators advertising through websites that have specifically targeted consumers searching for comprehensive health insurance (*e.g.*, ObamacarePlans.com).

15.     Starting in 2017, Assurance has sold hundreds of thousands of STM, LBI, and Supplemental Products to consumers through outbound telemarketing sales calls using licensed insurance agents as telemarketers who signed agent contracts with Defendant Assurance "for the purposes of soliciting insurance policies utilizing the Assurance IQ System."  Assurance has required the telemarketers to use its proprietary telemarketing platform and phone system to call

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

6

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

consumers. In marketing and selling the healthcare plans, Assurance has mandated that its telemarketers use and adhere to the telemarketing scripts Assurance wrote and provided, which often contained the misrepresentations alleged in this Complaint. Assurance's telemarketers have been permitted to use only the marketing materials it had pre-approved. Further, Assurance's telemarketers have been instructed to inform consumers at the beginning of sales calls that they are calling as agents of Assurance. Assurance has also maintained control over the telemarketers by auditing and monitoring sales calls, and it can terminate the telemarketers at will. Assurance has incentivized and compensated its telemarketers through hefty commissions and bonuses based on the volume of each telemarketer's sales.

### Deceptive Representations That Defendant's Health Plans Are Equivalent to Comprehensive Health Insurance

16.    On Assurance's website, it has misrepresented that the healthcare products it sold were equivalent to comprehensive health insurance. To create the impression that it sold comprehensive health insurance, Assurance has prominently claimed on its website that Assurance was "working with hundreds of different insurance carriers," and displayed the logos of "Top Health Insurance Providers," such as Anthem Blue Cross Blue Shield, Humana, and Kaiser Permanente. The following is a depiction of these representations as they appeared on Defendants' website:

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350



Source: www.healthinsurance.net, January 6, 2017, and February 24, 2018.

Contrary to these representations, Assurance did not work with hundreds of carriers and did not

sell health insurance plans for the depicted providers.

17.     The Defendant's website has also represented that Assurance "specialize[s] in

Obamacare," as depicted in the following excerpt:

> Get Quotes From Top Health Insurance
> Providers
>
> Affordable health insurance quotes can be found here,
> or you can buy health coverage today by speaking to
> one of our licensed agents. Since
> 1996, HealthInsurance.net has been America's trusted
> choice for affordable health insurance.  We have
> licensed insurance agents in all 50 states who can
> provide free quotes and help you find a reliable
> medical plan, no matter your situation. By working
> with hundreds of different insurance carriers, we are
> able to provide our customers with dental, vision, and
> prescription benefits for the best price available. We
> also specialize in Obamacare, short-term, family,
> Medicare, and low-cost plans!

Source: www.healthinsurance.net, January 6, 2017, and February 24, 2018.

Contrary to this representation, Assurance did not specialize in or sell "Obamacare" plans until

open enrollment in 2019 and thereafter continued misrepresenting that the STM and LBI plans

being sold were comprehensive.

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

18.     Consumers who visited Assurance's website and entered their contact information would typically receive a call from its telemarketers who, in numerous instances, stated they were calling from a "national health enrollment center," and that their system "will be searching **ALL** the carriers in __ (say the state they live in)." In fact, the Defendant has sold only a limited number of plans from just a handful of providers and did not disclose this fact to consumers.

19.     In sales calls, Assurance's telemarketers have touted and misrepresented plan features designed to lead consumers to believe they were purchasing comprehensive insurance plans. For example, Assurance's telemarketers have represented the LBI and STM plans as "PPO" plans equipped with their own provider networks; as having no limits on usage within the plans' networks; and as having no annual, lifetime, or other caps on benefits. Assurance's telemarketers have emphasized that the healthcare plans they were selling would leave consumers with very low out of pocket expenses for their healthcare services.

20.     The above representations are deceptive because: (a) many of the STM and LBI plans the Defendant has sold are not "PPO" plans and do not have affiliated provider networks with unlimited usage; (b) consumers would bear substantial risks and costs under the Defendant's plans as a result of significant coverage restrictions and limits on monetary benefits; (c) the STM and LBI plans the Defendant has sold were not comprehensive insurance plans or ACA-compliant and did not cover, or provided only limited coverage for, pre-existing conditions and other essential health benefits; and (d) the STM and LBI plans the Defendant has sold imposed severe monetary caps on benefit payments for many of the most costly healthcare services, such as ambulance transport, emergency care, inpatient hospitalizations, and surgeries.

### Deceptive Representations About Network Repricing

21.     Starting in 2017, Assurance's telemarketers began representing to consumers on

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

sales calls that the STM and LBI plans they sold to consumers included medical provider networks or "PPOs" that would "reprice" down all of the consumers' medical bills and expenses. In numerous instances, Assurance's telemarketers have represented that this "repricing" discount would significantly lower consumers' medical bills by "35-55%," "40-60%," and "up to 70%." Assurance's telemarketers, using scripts Assurance required them to follow, have emphasized these repricing discounts and led consumers to believe they would pay substantially reduced out-of-pocket amounts for medical services. The Defendant's scripts required, and its telemarketers made, these representations to consumers regardless of the network, provider, medical service offered, and state in which the consumer resided.

22.    In numerous instances, Assurance's telemarketers, as required in the scripts, have provided consumers with deceptive illustrations of how the repricing discount applied. For example, Assurance's scripts and telemarketers have presented the following examples of network repricing:

A.    "Let say you go to the doctor to see a specialist and the cost for that visit is $200. By staying within the network you will receive the PPO medical re-pricing, cutting the cost to up to 70%. Assuming a re-pricing of $100, then the insurance company pays an additional cash benefit of ($75 or $100) off the remaining balance, so your out of pocket balance will be ONLY ($25 or $0). Does that make sense? Sounds great, right?"

B.    "The national average of a doctor's visit is $200. First, the Multiplan pays 50% of that $200 visit which bring your bill down to $100 you follow me so far? Perfect then Chubb pays a cash benefit of $75 which is then applied to the remaining $100 leaving you with an out of pocket expense of $25 not bad at right? That is how your entire

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

plan works you receive a network repricing from the Multiplan PPO and cash benefit

from CHUBB leaving you with a very low out of pocket expense make sense?

Great."

23.     Contrary to these representations, the claimed repricing benefit was not actually

included in the STM and LBI plans that Assurance has sold, but instead would come to

consumers through a Supplemental Product, the existence and separate price of which was often

not disclosed to the consumer during the sale.  In many instances, consumers have been unable to

realize the repricing benefits Assurance's telemarketers promised. For example, even where

repricing was potentially available, the repricing discount varied greatly depending on the

consumer's state, provider, network, and medical service. Assurance's telemarketers and the

scripts they have used did not qualify the purported benefit with these factors. Instead,

Assurance's telemarketers have made sweeping promises of inflated repricing discounts to

consumers for which Assurance did not have adequate substantiation at the time they made these

representations.

## Deceptive Representations About Supplemental Products

24.     In connection with marketing the STM and LBI products, the Defendant has also

bundled and charged consumers for Supplemental Products, such as telemedicine plans,

prescription discount plans, dental discount plans, vision discount plans, and other ancillary

products. In many instances, Assurance and its telemarketers have not clearly disclosed as part of

the sales pitch that the Supplemental Products were separate products with separate monthly

fees. Based on the way Assurance's telemarketers have presented the STM, LBI, and

Supplemental Products, consumers often were not aware that they were purchasing the

Supplemental Products at all.

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

Federal Trade Commission
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

25.     Consumer confusion about the Supplemental Products flows directly from the Defendant's misleading sales pitch. For example, and as detailed in the Defendant's sales scripts, Assurance's telemarketers have often mentioned the Supplemental Products only briefly as part of a lengthy call focused mainly on the STM or LBI plans. The lines between the STM or LBI plans and the Supplemental Products were often blurred, with Assurance's telemarketers discussing the potential benefits of the Supplemental Products at the same time they were describing the benefits of the STM and LBI plans; and in numerous instances, Assurance's telemarketers have represented to consumers that the Supplemental Products, or the benefits they purportedly provide, are part of the Defendant's STM and LBI plans.

26.     In fact, these Supplemental Products, and the benefits they provide, are not included in the STM and LBI plans at no additional cost, but are separate, optional products with their own cancellation obligations and for which consumers would be charged additional monthly fees. However, Assurance and its telemarketers often have provided consumers only a single combined monthly price for STM and LBI plans without providing a breakdown of the costs associated with each of the separate Supplemental Products. In fact, Assurance managers discussed internally that breaking out and disclosing to consumers the separate cost of its most prominently bundled Supplemental Product would "cause an issue and people are going to want to remove it immediately." As a result, Assurance did not update its sales scripts until later to provide consumers with the separate costs associated with the Supplemental Products.

27.     Assurance's telemarketers have deceptively included the Supplemental Products in the sale of STM and LBI plans without consumers knowing that the Supplemental Products are separate, additional options that have separate costs and cancellation obligations.

## Deceptive Representations About Out-of-Pocket Maximums

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

28.     In numerous instances, the Assurance and its telemarketers have emphasized to consumers that the STM plans they sold had out-of-pocket maximums, and represented this as the maximum amount consumers would have to pay for services in a plan's term, after which, the health plan would pay 100% of the consumers' medical costs. This arrangement is a required feature of comprehensive insurance plans.

29.     For example, Assurance's telemarketing scripts had its telemarketers represent to consumers that, once the STM plan deductibles and out-of-pocket maximums were reached, the STM plan would then cover all of a consumer's remaining medical bills:

A.    "If you were to have something very serious occur you would reach your deductible and coinsurance pretty quickly, and once those are met, then Independence American Insurance Company will cover the rest of your bills up to… 1 million dollars…. <u>Your maximum out of pocket is $2,000</u>. Again, after you have met your deductible and out of pocket maximum, the carrier will cover up to…1 million dollars." (emphasis in original).

B.    "Your maximum out of pocket is $2,000.00 and Lifeshield will cover up to $250,000.00 after you have met your deductible and out of pocket."

30.     In fact, many of the STM plans the Defendant has sold imposed monetary limits on benefit payments for many of the costliest healthcare services, such as ambulance transport, emergency care, inpatient hospitalizations, and surgeries. These monetary limits rendered the plan's "out-of-pocket maximum" illusory when consumers who needed to use the healthcare services incurred very large, unanticipated charges in excess of the limits. The Defendant failed to disclose truthfully, in a clear and conspicuous manner, that the monetary limits on healthcare benefits provided by their plans make the actual out-of-pocket costs consumers could have to pay

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

considerably higher than the represented amounts.

**Assurance's Deceptive Conduct Substantially Harmed Consumers**

31.    Since 2017, thousands of consumers have complained to Assurance, Benefytt, the Better Business Bureau, and state regulators about the deceptive sales practices detailed above.

32.    These complaints show many consumers believed Assurance was offering plans providing comprehensive health insurance or possessing key features of comprehensive health insurance. Consumers agreed to purchase STM and LBI plans from Assurance and paid hundreds of dollars in enrollment fees and recurring monthly payments only to later learn that Assurance's STM and LBI plans do not provide the promised coverage or benefits. Some consumers did not realize how little coverage and benefits these plans provide until after incurring substantial medical expenses they thought would be covered.

33.    Similarly, consumers were often led to believe their core plans included supplemental coverage or benefits for such things as vision, dental, and telemedicine, only to learn later that Assurance's telemarketers had signed them up for separate products with substantial additional monthly fees. The charges for these Supplemental Products can total hundreds of dollars per transaction, which recur until cancelled.

34.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Assurance may violate laws enforced by the Commission, because, among other things: Assurance has a long history of continuous conduct of the type described above; Assurance engaged in its unlawful acts and practices knowingly and continued to deploy the unlawful practices outlined above even after learning of the Commission's lawsuit against another of Benefytt's distributors and after the Commission's investigation of Assurance; Assurance remains in the healthcare-related business; and Assurance has the means, ability, and

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

1    incentive to engage in similar conduct in the future.

2    **VIOLATIONS OF THE FTC ACT**

3    35.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

4    or practices in or affecting commerce."

5    36.    Misrepresentations of material fact constitute deceptive acts or practices

6    prohibited by Section 5(a) of the FTC Act.

7    **COUNT I**
8    **Deceptive Claims About Health Plans in Violation of Section 5 of the FTC Act**

9    37.    In numerous instances, in connection with the advertising, marketing, promoting,

10   offering for sale, or sale of STM, LBI, and Supplemental Products, Assurance has represented,

11   directly or indirectly, expressly or by implication, that:

12
13   A.  the STM, LBI, and Supplemental Products Assurance sells are ACA-compliant,

14       comprehensive health insurance or its equivalent;

15   B.  the STM and LBI plans Assurance sells have no limits on usage within the associated

16       PPO networks;

17   C.  the LBI plans Assurance sells have no limits on monetary benefits; and

18
19   D.  the STM plans Assurance sells would cover consumers' remaining medical bills once

20       the plans' deductibles and out-of-pocket maximums were met.

21   38.    In fact, in numerous instances in which Assurance has made the representations

22   described in Paragraph 37:

23   A.  the STM, LBI, and Supplemental Products Assurance sells are not ACA-compliant

24       comprehensive health insurance or its equivalent;

25   B.  the STM and LBI plans Assurance sells have limits on usage within the associated

26       PPO networks;

27

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

15

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

C.  the LBI plans Assurance sells have limits on monetary benefits; and

D.  the STM plans Assurance sells would not cover consumers' remaining medical bills once the plans' deductibles and out-of-pocket maximums were met.

39.    Therefore, Assurance's representations as described in Paragraph 37 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II
### Deceptive and Unsubstantiated Claims About Repricing in Violation of Section 5 of the FTC Act

40.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of STM, LBI, and Supplemental Products, Assurance has represented, directly or indirectly, expressly or by implication, that the STM, LBI, and Supplemental Products it markets and sells provide consumers with access to national networks that would significantly reprice and reduce the cost of consumers' medical bills and expenses, and would do so at ranges of 35% to 70%.

41.    In fact, in numerous instances in which Assurance has made the representations as described in Paragraph 40, the representation was false or misleading or was not substantiated at the time the representations were made.

42.    Therefore, Assurance's representations as described in Paragraph 40 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III
### Deceptive Claims About Charges for Heath Plans in Violation of Section 5 of the FTC Act

43.    In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of STM, LBI, and Supplemental Products, Assurance has represented, directly or indirectly, expressly or by implication, that:

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

A.  the STM and LBI plans Assurance sells include Supplemental Products or their benefits as part of the STM or LBI plans;

B.  the Supplemental Products or their benefits are included at no additional cost with the purchase of a STM or LBI plan; or

C.  the charges for all STM, LBI, and Supplemental Products appearing on consumers' bills are authorized by the consumers.

44.     In fact, in numerous instances in which Assurance has made the representations described in Paragraph 43:

A.  the STM and LBI plans Assurance sells do not include the Supplemental Products and their benefits as part of the STM and LBI plans at no additional cost;

B.  the consumer is charged separate, additional fees for each Supplemental Product bundled with the purchase of a STM or LBI plan; and

C.  consumers' bills include charges for STM, LBI, or Supplemental Products that the consumers had not authorized.

45.     Therefore, Assurance's representations as described in Paragraph 43 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IV**
**Unfair Claims About Unauthorized Charges in Violation of Section 5 of the FTC Act**

46.     In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of STM, LBI, and Supplemental Products, Assurance has charged consumers for products or services for which the consumers have not provided express informed consent.

47.     Assurance's practices as described in Paragraph 46 cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

17

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

not outweighed by countervailing benefits to consumers or competition.

48.     Therefore, Assurance's acts or practices as set forth in Paragraph 46 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## THE TELEMARKETING SALES RULE

49.     In 1994, Congress directed the FTC to prescribe rules prohibiting deceptive and abusive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

50.     Assurance is a "seller" or "telemarketer" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. §§ 310.2(dd), (ff), (gg). "Telemarketing" is a plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones involving more than one interstate phone calls. 16 C.F.R. § 310.2(gg). A "telemarketer" is any person who, in connection with telemarketing services, initiates, or receives telephone calls to or from a customer. 16 C.F.R. § 310.2(ff). A "seller" is any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F.R. § 310.2(dd).

51.     As a general rule, the TSR prohibits sellers and telemarketers from making any false or misleading statements to induce a person to pay for goods or services. 16 C.F.R. §310.3(a)(4). More specifically, the TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, material information in the sales of goods or services regarding (1) the total costs to purchase, receive, or use any goods or services that are the subject of a sales offer; (2) any material restriction, limitation, or condition, to purchase, receive, or use goods or services that are the subject of a sales offer; (3) any material aspect of the performance,

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer; and (4) any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(i)-(iv).

52.     The TSR also prohibits a seller or telemarketer from failing to disclose truthfully, in a clear and conspicuous manner, before a consumer consents to pay, (1) the total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer; and (2) all material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer. 16 C.F.R. § 310.3(a)(1)(i)-(ii).

53.     In addition, the TSR prohibits sellers and telemarketers from causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer. 16 C.F.R. § 310.4(a)(7).

54.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT V
### Misrepresentations About Health Plans in Telemarketing Calls in Violation of the TSR

55.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of STM, LBI, and Supplemental Products, Assurance has represented, directly or indirectly, expressly or by implication, that its STM, LBI, and/or Supplemental Products:

A.     are ACA-compliant, comprehensive health insurance or its equivalent;

B.     have no limits on usage within the associated PPO networks;

C.     have no monetary caps on benefits, including per day, per incident, annual, and

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

lifetime monetary caps;

D.   would cover consumers' remaining medical bills once the plans' deductibles and out-of-pocket maximums were met; and

E.   provide consumers with access to national networks that would significantly reprice and reduce the cost of consumers' medical bills and expenses, and would do so by as much as 35% to 70%.

56.    In fact, in numerous instances in which Assurance has made the representations set forth in Paragraph 55, it was selling STM, LBI, and/or Supplemental Products that:

A.   are not ACA-compliant, comprehensive health insurance or its equivalent;

B.   have limits on usage within the associated PPO networks;

C.   have monetary caps on benefits, including per day, per incident, annual, and lifetime monetary caps;

D.   do not cover consumers' remaining medical bills once the plans' deductibles and out-of-pocket maximums were met; and

E.   do not provide consumers with access to national networks that would significantly reprice and reduce the cost of consumers' medical bills and expenses, and would do so by as much as 35% to 70%.

57.    The acts or practices of Assurance as described in Paragraph 55, above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT VI
### Deceptive Acts and Practices About Product Charges in Violation of the TSR

58.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of STM, LBI, and Supplemental Products, Assurance has represented,

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

20

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

directly or indirectly, expressly or by implication, that:

    A.   the STM and LBI plans Assurance sells include Supplemental Products or their benefits as part of the STM or LBI plans;

    B.   the Supplemental Products or their benefits are included at no additional cost with the purchase of a STM or LBI plan; or

    C.   the charges for all STM, LBI, and Supplemental Products appearing on consumers' bills are authorized by the consumers.

59.    In fact, in numerous instances in which Assurance has made the representations described in Paragraph 58:

    A.   the STM and LBI plans Assurance sells do not include the Supplemental Products and their benefits as part of the STM and LBI plans at no additional cost;

    B.   the consumer is charged separate, additional fees for each Supplemental Product bundled with the purchase of a STM or LBI plan; and

    C.   consumers' bills include charges for STM, LBI, or Supplemental Products that consumers had not authorized.

60.    The acts or practices of Assurance as described in Paragraph 58, above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT VII
### Abusive Telemarketing Acts and Practices in Violation of the TSR

61.    In numerous instances, in connection with the marketing or sale of the STM, LBI, and Supplemental Products, Assurance has charged consumers for products or services for which the consumers have not provided express, informed consent in violation of the TSR, 16 C.F.R. § 310.4(a)(7), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

**COUNT VIII**
**Failure to Disclose Truthfully Material Information in Violation of the TSR**

62.     In numerous instances, in connection with the advertising, telemarketing, promotion, offering for sale, or sale of STM, LBI, and Supplemental Products, before consumers consent to pay for the products, Assurance has failed to disclose truthfully, in a clear and conspicuous manner, material restrictions, limitations, or conditions to purchase, receive, or use the products that were the subject of the sales offer, including that such products:

A.   were not ACA-compliant, comprehensive health insurance or the equivalent of such insurance;

B.   had material conditions, limitations, restrictions, and exclusions, and did not cover or had severely restricted and limited coverage for pre-existing conditions and essential health benefits;

C.   contained significant limits on usage within the provider network;

D.   contained limits on monetary benefits provided for some of the costliest medical services, including but not limited to, per day, per incident, annual, and lifetime limits on monetary benefits; and

E.   did not have out-of-pocket maximums for many of the costliest medical services due to monetary limits on plan benefits.

63.     Therefore, Assurance's acts or practices as set forth in Paragraph 62 violate the TSR, 16 C.F.R. § 310.3(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IX**
**Assisting and Facilitating Outbound Telemarketing Calls in Violation of the TSR**

64.     In numerous instances, Assurance has provided substantial assistance or support to sellers or telemarketers of the STM, LBI, and Supplemental Products at issue in this matter,

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

22

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350

whom Assurance knew, or consciously avoided knowing, were engaged in violations of §

310.3(a) of the TSR. Defendants, therefore, have violated 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

65.    Consumers have suffered and will suffer substantial injury as a result of

Assurance's violations of the FTC Act and the TSR. Absent injunctive relief by this Court,

Assurance is likely to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

WHEREFORE, the FTC requests that the Court:

A.    Enter a permanent injunction to prevent future violations of the FTC Act and the

TSR,

B.    Award monetary and other relief within the Court's power to grant, and

C.    Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated:    August 6, 2025

Ben Halpern-Meekin
Federal Trade Commission
915 Second Avenue, Suite 2896
Seattle, WA 98074
206-220-6350
bhalpernmeekin@ftc.gov
Attorney for Plaintiff
FEDERAL TRADE COMMISSION

COMPLAINT FOR PERMANENT
INJUNCTION, MONETARY
JUDGMENTS, AND OTHER RELIEF

FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-6350